**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **MASOOMA SAMIEE** | **CASE NO. 3:26-CV-02743 SEC P** |
| **VERSUS** | **JUDGE JERRY EDWARDS** |
| **LISA BOWEN, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM RULING AND ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by Petitioner Masooma Samiee ("Samiee"), an immigration detainee at the Richwood Correctional Center in Monroe, Louisiana. The federal Respondents ("the Government") answered the Petition (ECF No. 11). Samiee replied (ECF No. 12). After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is GRANTED.

## I. Background

Samiee is a native and citizen of Afghanistan. ECF No. 1-2 at 3. As a member of the heavily persecuted Shia Hazara ethno-religious minority and an advocate for women's rights, she fled Afghanistan after members of the Taliban assaulted her for refusing to wear a religious face covering. She entered the United States on July 29, 2024, seeking asylum. *Id.*; see also ECF No. 12 at 2. An asylum officer determined that Samiee had a reasonable fear of persecution, and on November 8, 2024, DHS granted her parole for one year and released her from detention. See ECF No. 1-4 at 1. According to Samiee, she subsequently moved to Maryland, filed an asylum

application, obtained employment authorization, and completed regular check-ins with ICE. ECF No. 12 at 2.

On October 22, 2025, Samiee voluntarily appeared for a scheduled ICE check-in and, despite her active parole, ICE re-detained her. *Id.* Samiee alleges that she was not served with any paperwork purporting to terminate her valid grant of parole nor was she given any opportunity to be heard before ICE arbitrarily revoked her liberty. *Id.* At no point during the re-detention did the officers ever provide Samiee with access to a Dari interpreter, despite her limited English. *Id.*

On March 10, 2026, the immigration judge denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture. ECF No. 11-2. Petitioner timely appealed that decision to the Board of Immigration Appeals ("BIA"). ECF No. 11-3. On June 16, 2026, the BIA determined that it could not meaningfully review Petitioner's appeal because the record lacked a complete transcript of the February 9, 2026 hearing. ECF No. 11-4. The BIA therefore returned the record to the Immigration Court "for further action and certification to the Board by the Immigration Judge thereafter, as appropriate." *Id.* According to the Executive Office for Immigration Review's automated case information system, Samiee was ordered removed on September 11, 2026.[1] She appealed the removal order to the Board of Immigration Appeals ("BIA"), and that appeal remains pending. *Id.* Accordingly, the removal order is not yet administratively final.

---

[1] https://acis.eoir.justice.gov/en/caseInformation

Samiee argues that her re-detention violated her statutory and constitutional rights in two ways: (1) ICE failed to revoke her parole before detaining her, in violation of 8 C.F.R. § 212.5(e), which in turn violated her due process rights under *United States ex. rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954); and (2) ICE failed to provide her with any pre-deprivation process before detaining her. ECF No. 12 at 4.[2]

The Government maintains that § 1225(b)(2)(A) governs Samiee's detention because she entered the United States without inspection and was not admitted. *See* ECF No. 11-1. DHS accordingly charged her as inadmissible under §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). *Id.* Accordingly, they contend that as an applicant for admission under § 1225(a)(1), § 1225(b)(2)(A) governs her detention while her § 1229a proceedings remain pending.

## II. <u>Law and Analysis</u>

### A. Statutory Framework for Detention

Under 8 U.S.C. § 1225(a)(1), a noncitizen who is present in the United States but has not been admitted is deemed an applicant for admission. Section 1225(b)(2)(A) generally requires the detention of an applicant for admission who is

[2] While Samiee's original pro se petition argued that her continued detention had become unreasonably prolonged in violation of her Fifth Amendment Due Process rights and that her re-detention violated her due process rights, she references *Zadvydas v. Davis*, 533 U.S. 678 (2001). Through her Reply memorandum, submitted by counsel, she acknowledges that while her initial pro se memorandum appeared to rely on *Zadvydas*, her two core due process claims appear on the face of her petition. She notes that throughout her petition she avers that she is subject to pre-order detention. As the Supreme Court has long held, pro se pleadings are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Liberally construing Samiee's petition, the Court notes that she pled due process claims challenging her parole revocation and re-detention, and her prolonged pre-order mandatory detention and it will not address any arguments or discussion of *Zadvydas*/8 U.S.C. § 1231.

not clearly and beyond a doubt entitled to be admitted while removal proceedings are pending. Noncitizens detained under this provision may be released only through the Department of Homeland Security's ("DHS") exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A).

Release from initial detention—whether under Section 1226(a) or 1182(d)(5)(A)—can be granted only based on individualized findings that the noncitizen represents neither a flight risk nor a danger to the community. *See* 8 C.F.R. § 241.4(e) (criteria for discretionary release under Section 1226(a) include a determination that the noncitizen "is not likely to pose a threat to the community following release" and "does not pose a significant risk of flight if released"); 8 C.F.R. § 212.5(b) (parole is "justified *only* on a *case-by-case basis* for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present *neither a security risk nor a risk of absconding*") (emphasis added).

Thus, every noncitizen who has been paroled or released into the interior of the country has been found by a government official to pose neither a security risk nor a flight risk. Moreover, the statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to such noncitizens. *See United States v. Caceres*, 440 U.S. 741, 760 (1979); 8 C.F.R. § 241.4(l)(2) (procedures for revoking noncitizen's supervised release); 8 C.F.R. § 212.5(e)(2)(i) (procedures for terminating parole).

The parties agree that Samiee is presently detained pursuant to § 1225(b). The Government argues that Samiee's detention is mandatory under § 1225(b)(2), as

interpreted by the Fifth Circuit in *Buenrostro-Mendez v. Bondi,* 166 F.4th 494 (5th Cir. 2026), and that no additional process is constitutionally required. The Court agrees that the Fifth Circuit's decision in *Buenrostro-Mendez* forecloses statutory challenges to detention under Respondents' interpretation of Section 1225. That conclusion, however, does not resolve Samiee's constitutional claim.

As this Court has frequently recognized, the question of whether Congress authorized detention under § 1225(b) is analytically distinct from whether the Government may revoke a liberty interest without affording constitutionally adequate process. *See Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La. Mar. 5, 2026); *Kilic v. Acuna*, 1:25-CV-01928, 2026 WL 1652575, at *2 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. April 29, 2026); *Andrade-Cunalata v. Wyatt*, No. 3:26-CV-01155 (W.D. La. July 16, 2026).

**B. Procedural Due Process**

Samiee's procedural due process claim is separate and apart from whether she is ultimately subject to mandatory detention under § 1225(b). The question is whether, after the Government permitted her to remain at liberty in the United States, the Fifth Amendment required some form of individualized process before that liberty could be revoked. *See Hernandez-Fernandez v. Lyons,* 2025 WL 2976923, at *7, *9 (W.D. Tex. Oct. 21, 2025). Neither *Jennings v. Rodriguez,* 583 U.S. 281 (2018), nor *Buenrostro-Mendez* forecloses Samiee's constitutional claim. As this Court observed in *Diallo*, those decisions address Congress's statutory detention authority

and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge,* 424 U.S. 319 (1976). Under *Mathews*, courts consider: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interests, including the burdens of additional procedures.

**a. Private Interest**

The interest in being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem,* 5:25-CV-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Although *Buenrostro-Mendez* establishes that § 1225(b) authorizes mandatory detention, it does not eliminate the liberty interest that developed after the Government affirmatively released Samiee and knowingly permitted her to remain at liberty in the United States before re-detaining her.

Unlike cases involving individuals who lived in the United States without the Government's knowledge until their eventual apprehension, *see Sosnava-Rodriguez v. Ortega,* No. 26-50183, 2026 WL 1906557, at *15 (5th Cir. July 2, 2026), reh'g en banc granted, opinion vacated, 2026 WL 2014647 (5th Cir. July 10, 2026), Samiee's re-detention did not result from the Government's first discovery of her presence. In fact, DHS knew of her presence, as Samiee was apprehended shortly after entering

the United States in 2024 and was affirmatively released by DHS on parole as an alternative to detention. She thereafter remained at liberty before ICE re-detained her on October 22, 2025, at an ICE check-in. Nothing in the Government's Response indicates that Samiee absconded, violated the conditions of her release, committed a crime, or otherwise engaged in conduct prompting DHS to reverse its prior decision permitting her to remain in the community.

During her time at liberty, Samiee, who is 40 years old, moved to Maryland, she was reunited with brother and sister, and established significant ties to the community. She diligently pursued legal status, applying for asylum within one year of entry and obtaining work authorization. *See* Supplemental Declaration of Samiee, doc. 12-1 at ¶ 6. Additionally, Samiee became deeply involved in Maryland's Hazara-American ethnic association and took English classes. *Id.* Before her detention, she planned to study nursing through a Certified Nursing Assistant program in Maryland. *Id.*

Thus, the first factor strongly favors Samiee.

**b. Risk of Erroneous Deprivation**

The second *Mathews* factor likewise favors Samiee. The Government re-detained her without providing advance notice of the proposed termination of her parole, an opportunity to respond, or any individualized process addressing the revocation of the liberty granted to her by the Government.[3] As this Court noted in

[3] The document authorizing Petitioner's parole provides that "ICE may terminate parole <u>on notice</u> prior to the automatic termination date." Doc. 1-4. (emphasis added). No such notice was provided here.

*Andrade-Cunalata, supra,* the complete absence of procedural safeguards creates a substantial risk of erroneous deprivation because the Government alone determines when a previously granted liberty interest will be revoked.

Because Samiee received no individualized process before that liberty was revoked, the risk of erroneous deprivation weighs in favor of requiring additional procedural safeguards. While the Government's Response focuses mainly on the Petitioner's original reliance on *Zadvydas*, the crux of their argument is that Samiee is subject to mandatory detention under § 1225(b). However, Samiee's procedural due process claim does not depend on whether she ultimately is entitled to a discretionary bond hearing. Instead, she contends the Government violated the Fifth Amendment by revoking the liberty it had permitted her to enjoy without first providing constitutionally adequate process. Moreover, minimal procedural safeguards could reduce the risk of erroneous deprivation without altering the statutory detention framework. At a minimum, notice of the reasons for re-detention and an opportunity to contest the factual issues surrounding the revocation of Samiee's liberty would provide meaningful procedural protection while leaving the ultimate statutory detention determination intact. The Due Process Clause requires only such procedural protections as the particular situation demands. *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

**c. Government's Interest**

Finally, the Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those

individuals whom Congress has made subject to § 1225(b). Providing constitutionally adequate procedures before revoking previously granted liberty does not undermine Congress's determination that applicants for admission are generally subject to mandatory detention. Rather, it requires only that the Government afford constitutionally adequate procedures before withdrawing liberty it has previously conferred. Due process protections remain even when Government authorities have discretion to revoke supervision. *See Mendoza v. Noem,* 823 F. Supp. 3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26- CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

Balancing the three *Mathews* factors, the Court concludes that the Government violated Samiee's procedural due process rights by re-detaining her without affording any individualized process after permitting her to remain at liberty.

This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory question of detention authority, but not the separate constitutional question of whether the Government may revoke an established liberty interest without affording due process. It is also consistent with this Court's prior decisions distinguishing *Sosnava-Rodriguez* and finding that ICE's failure to provide Petitioner with any pre-deprivation process violated her rights under the Fifth Amendment's Due Process Clause. *See, e.g.*, *Isakova v. S. La. ICE Processing Ctr.*, No. 26-1481, 2026 WL 2790305, at *3 (W.D. La. Sept. 17, 2026).

Because the Court concludes that Samiee is entitled to relief on her procedural due process claim, it need not address her remaining arguments.

## III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. The Government is ORDERED to release Samiee from custody within seven (7) days, subject to the conditions of supervision previously imposed or such reasonable conditions as DHS may lawfully impose. The Government must provide advance notice of her release to counsel.

IT IS FURTHER ORDERED that the parties file a joint notice of compliance with this Order within 24 hours of Samiee's release.

THUS ORDERED AND SIGNED in chambers this 14th day of October, 2026.

**JUDGE JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT COURT**